Our second case of the day, Central States v. American International. Good morning. May it please the court, Emily Gleason on behalf of Central States. We're here asking that this court reverse the district court's dismissal of our lawsuit against AIG Insurance Company and its subsidiaries pursuant to rule 12b6 for failure to state a claim. Specifically, the court held that the funds claims pursuant to 502A3 of ERISA did not fall within the confines of 502A3 because while the court acknowledged that the funds claims were teed up as equitable claims, the court joined several of this court's sister circuits in holding that at the end of the day, the funds claims are actually legal in nature because we are seeking money. Just to stop for a moment, the district court's finding is forcing us to live with an anomaly in ERISA. For some reason, the statute that was drafted to protect employer funded plans and its participants is being interpreted in a way where inexplicably, employer funded plans like ours are being told that we cannot file lawsuits against private insurance companies for coverage disputes. And it's weird because private insurance companies are able to sue one another every day of the week in state court in coverage disputes. It's pretty normal. But we're in a really bad situation here and it was predicted by this court in the Winstead v. JCPenney case that potentially, if we weren't allowed to come in under 502A3 in these situations, it would literally incentivize private insurance companies to sit on their hands every time they see an employer-funded plan in the picture and just let us pay every single time and then... Ms. Basin, if we would accept your approach, we'd create a conflict, wouldn't we, with five other circuits? Yes, Your Honor. I don't believe there was a dissenting opinion in any of those five circuit opinions. No, Your Honor. We acknowledge we have an uphill battle here, but we think that this court can straighten it out. I really do think this has gotten screwed up. Well, every court to look at your claims has ruled against you. What did they miss? Or putting it another way, you know, what's different about this case from the other circuits? Well, the thing that all of the courts up until this point have missed is they've oversimplified the Great West case to mean that a case seeking money is a case for money damages. Now we know the Supreme Court has already observed in Bowen v. Massachusetts that just because an entity sues for money doesn't necessarily mean that they're suing for money. In Bowen, the plaintiffs were suing for specific relief in the form of money, specifically Medicaid reimbursement. And it was argued that since they were seeking reimbursement of money, that they were essentially seeking money damages. But the Supreme Court said, no, it's not money damages. They're seeking specific relief in the form of money. They're just asking for the return of the very thing they were entitled to in the first place, which is very distinct from money damages, which are actually compensation to substitute for a loss. Great West, we think, has been overextended in all of these cases. And it's important to note that Great West was a subrogation case, where the contract case. Because on one hand, you had the health fund, and on the other hand, they were suing their participants. And there was a plan in between governing the terms of the dispute. Here, we have a health and welfare fund and a pretty much unrelated third-party private insurance company. There's no contract governing the terms of our dispute here. What is the source of your relief? What source of law? Equitable subrogation? We're seeking equitable restitution, equitable subrogation, declaratory judgments. If it's equitable restitution, what's the substantive source of your claim for relief? Equitable restitution to prevent unjust enrichment. And that's one thing that the Great West court did instruct. And where Great West is very instructive here, is they say, in order to determine whether a claim is equitable in nature, pursuant to 502A3, you look to the restatements. And here, we looked to the restatement of restitution and unjust enrichment. And sections 23 and 24 indicate that the type of relief that we're seeking in these situations are somewhat like, it's restitution to prevent unjust enrichment, but it's somewhat like what the restatement calls indemnity and in any event, there's situations where someone is being unjustly enriched and there's no contract to point to. So the parties have to rely on equity. They have to rely on natural justice to resolve the situation. Well, right, but the plan language is in play, as is the policy language of the defendant insurers, right? Yes. In terms of the coordination of benefits clauses. Yes. And if we were allowed into court, that's ultimately what we'd be looking to, the interlocking plan and policy to see who owes what. Ms. Gleason, aren't you really advocating for Justice Ginsburg's approach in her dissent? Not really. That's sort of our – it's a little complicated. We are not arguing against Great West here. That's a – yeah, no, that's – We think that – We're kind of bombed by that. We think that – I mean, Great West tells us that the type of – the way you determine whether the type of relief you're seeking is equitable relief as required by 502A3 is to look at the restatements and try and surmise whether your lawsuit would have made it through the door as a typical cause of action in a court of equity back in the 18th century. And we think if you look at the restatements, this case, unlike the actual case in Great West, would have made it through the door. And we think that Great West – I mean, the Great West court would have acknowledged that. The Great West court even talked about Bowen, for example, and had to distinguish the facts in Great West from Bowen and acknowledge that Bowen was not a contractual dispute. Great West was a contractual dispute. Why aren't you just arguing that the Great West line of cases is limited to suits between the plan and beneficiaries or participants and not a fight between two insurance companies on coordination of benefits and to apply it to that new context is wrong? It really is. I mean, that's true. And that is our position. I mean, that is the factual context of that line of Supreme Court cases. It's always a suit between the plan and a beneficiary or participant, depending on what the nomenclature is. And so the equitable principles that it drew on are limited to that context. We've got two third-party payers here. Yes. Right? And so the equity may apply a little bit differently in this context. Right. Is that what you're arguing? It is what we're arguing. The only reason why we can't ignore Great West is because they tell us, look to what 18th century courts would have done. That applies no matter what. But we think that we've analyzed this, and we really think this would have gotten into the door, into an 18th century court of equity. It seems like a pure unjust enrichment action where there's no contract governing the situation. Our only hope here is equity. And if this court disagrees with our analysis on that, we're back to the fact that we're left with an anomalous result in ERISA. And, you know, the Supreme Court has said before that Congress doesn't hide elephants in mouse holes. It's implausible to think that Congress would have intentionally boxed ERISA plans out of court in these situations without doing so more expressly and deliberately, without, you know, doing it in this backdoor type nature. It doesn't make sense. So unless there are any further questions. You want to reserve some time? Yeah, I'll reserve some time. All right. Thank you. Ms. Cassidy. May it please the court. Amy Cassidy on behalf of the defendants, which I'll refer to collectively for convenience as AIG. As a fiduciary under ERISA, Central States is bound by Section 502A3 to equitable relief. Money is only available in equity if it is in a traceable or an identifiable fund. And it's the fund itself, not the amount of the fund, that must be identifiable. The idea being that if a chunk of money passes into the hands of the defendant that should be returned to the plaintiffs, that that chunk of money can be returned just like a non-monetary object. And Central States tries to frame its argument in this fashion, saying in their reply that they're just looking for their money back, but that exposes the flaw in the argument. There is no money to give back. AIG has not received any money. There is no identifiable or traceable fund to be returned. But the defendant insurers have received a benefit at Central States' detriment or to Central States' detriment, and based on the coordination of benefits clauses in each of the relevant policies or plain language, it may be unjust to permit the retention of that benefit. Why isn't this just a normal instantiation of an unjust enrichment, substantive cause of action, goes back to the last argument, and a restitutionary measure of damages? Right, because under Great West and Saraboff, regardless of what type of claim it is, whether it's unjust enrichment, subrogation. Right, but those were claims among or between the plan and its beneficiaries or fiduciaries governed by contract. This is in a different domain. As I said, it's a fight between two third-party payers who owe a mutual obligation to, or at least a potentially mutual obligation, to the plan participants and beneficiaries. And it's a question of who's required to pick up that tab and if Central States did it when the primary obligation was your clients, why isn't that conferral of a benefit unjustly? Because under 502A3, they're only entitled to equitable relief. Well, that's an equitable cause of action, right? And I think that what the Court teaches in Great West and what this Court recognized in Reich is that not only the cause of action must be equitable, but the relief must be equitable as well, and that's the language. But the restitutionary measure for an unjust enrichment claim could be characterized as an equitable measure of damages. It's not purely compensatory. It's just a disgorgement remedy, right? Well, and I think what the cases say is restitution can be legal or restitution can be equitable. It can be equitable if it is returning that chunk of money that came to the defendants. But if there is no chunk of money, even if there is some kind of benefit not to be returned, then it sounds in law and it's a legal remedy. And while it might fall within restitution or unjust enrichment, it doesn't fall within the equitable relief that an ERISA plan can obtain under 502A3. And I think that that's... Well, did Great West and the cases that follow it purport to define the universe of equitable claims and remedies? Or was it limited to its context? No, I think that they defined what is available in terms of money. I think that they said that ERISA is a carefully... it's a reticulated statute, it's very carefully written, and that when money is being sought, that money is only equitable if it is in a traceable fund or if there is a contract that gives rise to an equitable levy agreement. You're just repeating the holding of the case. I'm asking you the limits of that holding and whether it's limited to its context or was the court purporting to cover the waterfront and tell us everything that exists under the sun in terms of equitable rights and remedies, substantive causes of action, and remedial measures. I think that it does limit what can be awarded when we're talking about money, that unless there's a fund, that the return of money is a legal remedy, it's the classic legal remedy, and that if it's not a fund that can be returned, that I think that Great West and Sereboff does define what remedies are available and that other remedies can't be provided under ERISA to an ERISA plan. And it's for that reason that the money is being sought from the general assets of the defendants, that the other five circuits who have addressed this have all determined that under Great West and Sereboff, the result is that this is a legal claim that central states as an ERISA plan cannot obtain. And the Supreme Court conducted the analysis that central states asked this court to perform by going into treatises and the restatement and centuries of case law, and there's nothing about this case that would make it different. The central states argues that it should be different because there's no contract here, but I think that just means that there cannot be an equitable lien by agreement, which can substitute for the traceability requirement. But absent an equitable lien by agreement or an identifiable fund, it's legal relief. King v. Burwell is also cited in the reply. It's a recent Affordable Care Act case from the Supreme Court, which just talks about the principles that can be applied if there's ambiguous language in a statute, but the Supreme Court has repeatedly found that 502A3 is unambiguous and allows for money damages only when they're in an identifiable or traceable fund. So we think the principles announced in King v. Burwell do not have application here. Right, but aren't those principles limited to equitable lien cases or lien by agreement cases and constructive trust cases and that sort of thing rather than this case, which is essentially a claim for equitable subrogation, right, under the common law? Well, I think that what the cases have said is that there can't be a common law claim under 502A3. It can't be a separate claim. What they're limited to is equitable relief and that regardless of what it's called, if it's money damages, it has to be traceable or it has to be an equitable lien by agreement. If we're in the domain of constructive trusts and equitable liens, but we're not. We're talking about equitable subrogation, which is an equitable basis for relief between two third-party payors and the measure of recovery is restitutionary. So why isn't that by definition equitable? And it's explained, I think, in Restatement Section 24, which I think is where you're going, which is equitable subrogation. And the subrogation claim that is brought is legal. They've asked for subrogation to be subrogated to our insured under our contract. But what the comments to Restatement 24 say is that... Well, no, they're not suing your insured. This is the fight between the two third-party payors. Right. They have a contractual subrogation claim where they say they are subrogated to our insured's right to seek coverage from us. That's the subrogation claim they state in the complaint. But if it were equitable subrogation under Section 24, which it's not, the comments to Section 24 make clear that regardless of whether or not the claim can fit within that, that the restatement makes no comment on whether or not the relief obtained would be necessarily legal or equitable. It's a two-part test. Even if they could show that it is an equitable claim under the idea of Section 24, there must be also an equitable remedy. And the restatement specifically states that it's not addressing that, but it does state that where you're talking about an instance where there's two people with independent obligations and it's just a money damage that they want to be returned, which is not in a fund, that that would be a typically legal remedy. So it's the distinction between law and equity that the Supreme Court is focused on that prevents recovery in the situation of equitable subrogation. For those reasons, we believe that Mertens, Great West, and Sereboff control the result in this case, just like the other five circuits have recently found. And with regard to a prospective DJ, the central states request a declaration of what the priority of coverage with coordination of benefits would be for future cases. We believe they have not shown that there is any injury that is certainly impending, which is the test under CLAPR. They haven't identified any student athlete who is or has been injured, who has unpaid medical bills, which they claim should be paid by an AIG company and haven't been paid. It's interesting. The Sixth Circuit opinion said that was okay, or at least didn't opine on it. And the Fifth Circuit said that's not okay, that's not right. In the Sixth Circuit, I believe that the insurance company did not appeal the declaration. And I think what they're talking about there, really, is in the instance of an unpaid claim, a coordination of benefits issue. And some circuits hold that a risk of preemption requires that the plan language be given effect in that instance. So a known unpaid claim, not unknown. Exactly. Exactly, where you can look at the plan and the policy and determine coordination of benefits. Some circuits, in that instance, will look to a risk of preemption. Some circuits, like the Seventh, do not look to a risk of preemption. Instead, they find that a risk of preemption does not apply to private contracts, and they enforce the coordination of benefits. But that's where you're talking about an identifiable unpaid claim, where you can conduct that analysis. Because there is no such allegations here, central states depends on an affidavit, which was not attached to the complaint, but was submitted with an unsuccessful motion for an injunction, and represents that the affidavit states that AIG has and says it will continue to refuse to pay claims that are covered by both central states and AIG. But in fact, the affidavit states only that the affiant believes that there has been such a practice and attaches to it four letters which disprove the assertion. In one of those letters, AIG states it has paid the claim in issue. In the other letters, it states that it reserves its rights and asks for more information. And further, central states dismissed its case here as to six of the underlying claims on the basis that it had received reimbursement. So the contention that there's certainly impending harm because AIG has a practice of refusing to pay claims that are covered by both central states and AIG we believe is demonstratively false. There's no case or controversy. This result does seem anomalous in the context of what ERISA is supposed to be doing. And that has been addressed by many cases, as we've cited. And as the Great West case said... Right, it's sort of a too bad, so sad. That's the way it is. Well, I think what Great West was saying was that basically as a separation of powers issue, if they want to change 502A3 and its limitation to equitable relief, that the remedy is with Congress. But as Great West said, it's not our job to find reasons for what Congress has plainly done, but it's our job to avoid rendering what Congress has plainly done here, limit the available relief, devoid of reason and effect. So I think that mandates the outcome that the district court reached. And we ask the court to affirm the district court's ruling. Thank you. Thank you, Ms. Gasson. Ms. Gleason. I think that it's important to note that the Great West case was limited to its context. It was a case where the Supreme Court took a good look at restitution in the context of a subrogation case. A contractual subrogation. Right, a contractual subrogation case. So in hindsight, of course that came to the result that what the plaintiff was seeking was legal in nature. It was essentially a breach of contract case. This isn't anything like that. This is a purely equitable action. I think that's the key distinction here and the key takeaway that we failed to get across in the other circuits. So if we are in Section 24 of the restatement, what's the remedy? Section 24 of the restatement provides a cause of action for equitable subrogation to prevent unjust enrichment. And this Court has previously held that if you can find a claim, if a claim is equitable, then the relief for that claim is equitable. And likewise, if it's determined that a claim is legal, then the remedy is legal. Do these claims go to juries? No, they do not. Outside the ERISA context, they do, don't they? That's true, Your Honor. Disputes between insurance companies and state court? I misunderstood. For equitable subrogation, those go to juries? They're considered legal issues? Sure. Well, equitable subrogation set forth in Section 24 of the restatement is a little different. The restatement's comment actually notes that there's some ambiguity, and it's not like the typical subrogation that we know of that was looked at in Great West. Different states treat it differently. It's hard to understand. It's not like the way we know subrogation as in the subrogation case that went to Great West. Equitable subrogation, they said it's essentially the same thing as indemnity in Section 23, only instead of joint and several obligors, you're looking at two unrelated entities that both owe another party the same money. So it's a weird distinction, and the restatement does point out that it's not, even though they use the word subrogation, it's not the subrogation we all knew. Right, you've got third parties. It's the context that matters. It's third-party payers, not joint tortfeasors who both have an obligation to the plaintiff, et cetera, and may have indemnification duties running between them. Right. Well, thank you so much for your time today. All right. Thank you, Ms. Gleason, Ms. Cassidy, all counsel.